UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PIM BRANDS, INC., *Plaintiff*, v. NEW CIBO VITA LLC, *Defendant*. | Civil Action No. 25-cv-01418(MEF)(AME) <br><br> **OPINION and ORDER** |

\* \* \*

For the purposes of this Opinion and Order, the Court largely assumes familiarity with the procedural history and allegations of this case.

\* \* \*

The case in a nutshell: the Plaintiff[1] and the Defendant[2] sell yogurt-covered fruit snacks, see Complaint (ECF 1) at ¶¶ 3-4, and the packaging of the Defendant's snacks is said by the Plaintiff to list out some false claims. See id. ¶ 66. That they have no artificial ingredients, for example, and that they have a certain number of "probiotic cultures." See id. ¶¶ 5-7.

In light of the above, the Plaintiff sued --- pressing, among other claims, an unfair competition claim under New Jersey common law. See id. ¶¶ 76-82.

The Defendant has now moved to dismiss that claim. See Memorandum in Support of New Cibo Vita LLC's Motion to Dismiss Count II of Pim Brands Inc.'s Complaint (ECF 24-1) at 7-9.

---

[1] Pim Brands, Inc.

[2] New Cibo Vita LLC.

The Defendant's argument: under New Jersey law, there cannot be an unfair competition claim that is based, as here, only on an allegation of false advertising.[3]

The Court's conclusion: the Defendant has it right, and so its motion to dismiss must be granted.

\*   \*   \*

Can false advertising, standing alone and as defined in footnote 3, count as unfair competition for the purpose of a New Jersey unfair competition claim?

As to New Jersey law, "the decisions of the [New Jersey] Supreme Court are the authoritative source." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).

But there is no "controlling," Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022), New Jersey Supreme Court decision as to the question on the table.

Therefore, the Court must fill the gap by "predict[ing]," Spence, 623 F.2d at 216, how the New Jersey Supreme Court will eventually choose to resolve the issue. See, e.g., Schulman v. Zoetis, Inc., 684 F. Supp. 3d 275, 278 (D.N.J. 2023).

\*   \*   \*

---

[3] "False advertising," as used throughout this Opinion and Order, does not include two things. First, it does not include advertising that references someone else's product. That sort of advertising can potentially raise distinct concerns. But there is nothing like that here. For example, the packaging of the Defendant's product contains no reference to any of the Plaintiff's products. (There is a trivial and passing mention in a social media post allegedly associated with the Defendant to a product made by the Plaintiff. See Complaint ¶ 34. The Court discounts this as plainly having no bearing on this case.) Second, "false advertising," as used here, does not include advertising that pulls the wool over consumers' eyes as to whose product is being sold. There is, again, nothing like that alleged here. The closest the Plaintiff comes is noting some similarity in the shape (and perhaps the color) of the Plaintiff's and the Defendant's snacks. See id. ¶ 4. But there is no meaningful allegation that anyone buying the Defendant's snacks would think that they were buying the Plaintiff's.

To make this prediction, start with the history of the unfair competition tort invoked here by the Plaintiff.[4]

The tort is not an especially old one. At the tail end of the 19th century, it was fresh enough to be unfamiliar.

> Unfair competition, as the designation of a legal wrong which the law will undertake to redress or prevent, has only of late years begun to make its appearance in the books. To most lawyers, it is safe to say, the title carries no very definite meaning, for as yet its use is almost entirely confined to the reports, . . . while it is quite unrecognized in digest, text-book, or dictionary.

Oliver R. Mitchell, Unfair Competition, 10 Harv. L. Rev. 275, 275 (1896).

But things came together quickly enough, and the tort was soon understood as having a definite shape.

As the Supreme Court understood it in 1905, "[t]he essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another; and if defendant so conduct its business as not to palm off its goods as those of complainant, the action fails." Howe Scale Co. of 1886 v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 140 (1905).

---

[4] Two things. First, the tort in play here sometimes goes by "unfair competition" and sometimes goes by "unfair trade." No matter. The words are interchangeable. They point at the same thing. In 1935, for example, the Supreme Court defined "unfair competition" by reference to an earlier "unfair trade" case. See A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 531-32 (1935) (citing Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 604 (1888)). Modern cases take the same basic tack. See, e.g., Nelly de Vuyst, USA, Inc. v. Eur. Cosmetiques, Inc., 2012 WL 246673, at *1, *9 (S.D.N.Y. Jan. 6, 2012); Lynch v. Coinmaster USA, Inc., 614 F. Supp. 2d 494, 505 (D. Del. 2009). And second, note that unfair competition/unfair trade has sometimes been taken to encompass things that have nothing to do with this case. Like antitrust-type claims, for example. See Charles G. Haines, Efforts to Define Unfair Competition, 29 Yale L. J. 1, 15 (1919). Or what amount to claims for tortious interference with contract. See id. at 2.

Put another way, unfair competition was taken to be about "palm[ing] off," id. --- about a company that pitches itself to consumers in a way that might well fool them into thinking that, say, the soda they are buying is a Coke when, in fact, it is something else entirely.

And "palm[ing] off" was the only thing that unfair competition was about. Its "essence," per the Supreme Court, was singular. Id. (describing "the essence" of the wrong) (emphasis added). If there was no "palm[ing] off," an unfair competition claim could not get off the ground. Id. ("[I]f defendant so conduct its business as not to palm off its goods as those of complainant, the action fails.").[5]

---

[5] By taking aim at palming off, the tort of unfair competition protected consumers by indirect means --- by limiting one company's ability to take another company's brand equity. If Company-2 were allowed to sell its product using packaging very similar to Company-1's --- then a consumer would need to squint too hard to spot the difference between the products. That could hurt the customer, if he thought he was picking up some Company-1 flour, but was actually buying flour made by Company-2. (And that could also hurt Company-1, which had presumably invested in intellectual property to build a readily recognizable brand.) In short: the tort of unfair competition safeguarded consumers by ensuring that Company-1 could keep exclusive use of the branding it had developed, by preventing the Company-2s of the world from palming off their goods as Company-1's. This meant that the tort of unfair competition overlapped with the law of trademark --- which also focused on protecting the intellectual property associated with a company's name and brand. See, e.g., Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413 (1916) (noting the "essential element is the same" for both unfair competition and trademark). But there were differences between them. For example, the tort of unfair competition could reach further than trademark law. To cover, say, palming off of what we would today call service marks --- as in Knott v. Morgan, 48 Eng. Rep. 610 (1836). And the tort of unfair competition could be more flexible, deployed to cover palming off based on brand symbols that for one reason or another could not be formally registered as trademarks --- as in Orr Ewing and Co. v. Johnston and Co., 40 L.T. Rep. N.S. 307 (1879). Cf. Shyamkrishna Balganesh & Gideon Parchomovsky, The Role of Unfair Competition in the Common Law, Intellectual Property in the Common Law (Cambridge University Press) 485 ("Originally, unfair competition complemented trademark law by

4

\*   \*   \*

During the early part of the 20th century, the unfair competition tort stretched out a bit.

It began to cover not just palming off, but also misappropriation. <u>See</u>, e.g., <u>Int'l News Serv. v. Associated Press</u>, 248 U.S. 215, 236–37 (1918) (holding that an unfair competition tort could go forward when one news company made use of bulletins that were based on reporting done by another news company); <u>see also</u>, e.g., <u>ITC Ltd. v. Punchgini, Inc.</u>, 9 N.Y.3d 467, 476–77 (2007) (describing the "two theories of common-law unfair competition" recognized under New York law, "palming off and misappropriation" --- and, as to misappropriation, noting the influence of the Supreme Court's <u>International News Service</u> decision).

But palming off and misappropriation share the same core DNA.

When Company-2 palms off its product as Company-1's, it is in essence taking a bit of Company-1's property. Maybe a trademark or a service mark.[6] Or maybe the goodwill Company-1 has worked to build up.[7]

---

affording protection to trade names that failed to comply with the mandates of statutory trademark law."); Christine Haight Farley, <u>The Lost Unfair Competition Law</u>, 110 Trademark Rep. 739, 745 (2020) (noting "unfair competition law developed . . . out of the gaps in protection in trademark law").

[6] <u>See</u> footnote 5.

[7] As to the understanding during the relevant period that goodwill is a kind of property or quasi-property, the foundational cases are <u>Cruttwell</u> v. <u>Lye</u>, 34 Eng. Rep. 129, 134 (Ch. 1810) and <u>Matter of Brown</u>, 242 N.Y. 1, 5 (1926) ("Good will . . . is presumptively an asset to be accounted for like any other by those who liquidate the business."), plus <u>Rotan</u> v. <u>United States</u>, 43 F.2d 232, 236 (S.D. Tex. 1930) (concluding the parties "bought and sold a good will as a definite, tangible asset") and <u>Fisk</u> v. <u>Fisk</u>, 79 N.Y.S. 37, 38 (App. Div. 1902) ("What a purchaser of the good will acquires is the right to advertise or issue a statement showing that he has succeeded to the business of the firm, which, by the death of the last survivor, has become extinct. That this right is valuable, and that it can, in the present instance, be sold with the other property of the firm, appears.").

5

And when Company-2 misappropriates something from Company-1 --- the something being misappropriated may not quite be property as a formal matter, but it is at least "quasi property," Int'l News Serv., 248 U.S. at 236, that Company-1 has an interest in because it has invested its "skill, labor, and money," id., in it.[8]

\*   \*   \*

With this background in mind, come now to the question that is before the Court: under New Jersey law, would the New Jersey Supreme Court hold that an unfair competition claim can be made out based only on a false advertising allegation?[9]

From the get-go note this: a false advertising allegation is a long way from the taking-someone-else's-property approach that, as discussed just above, is at the root of an unfair competition claim --- whether that claim is pressed on a palming-off theory or on a misappropriation theory.

If a company engages in false advertising --- if it says something untrue about its own product --- how is it potentially taking property from another company?

It is not snatching away the second company's trademark or service mark or its goodwill.  And it is not appropriating something that the second company has a "quasi property," Int'l News Serv., 248 U.S. at 236, interest in.

Consider, for example, an airline ABC that advertises "we can get you from Newark to LA in 2 hours or less."

This is false --- and regulators may get involved to protect consumers who might be misled by the airline's claim.

---

[8] As to the connection apparently drawn by the Supreme Court in the quoted International News Service passages between (a) the investment of labor and (b) the creation of property or quasi-property --- see, for example, Carpenter v. United States, 585 U.S. 296, 348 (2018) (Thomas, J., dissenting) (citing John Locke, Second Treatise of Civil Government (1690)) and Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 860 n.10 (1987) (Brennan, J., dissenting) (same).

[9] Recall the understanding of false advertising being used here, as set out in footnote 3.

6

But ABC's false advertising about itself would not grab any property away from other airlines, like United or Delta.

The false ABC ad does not touch on a United or Delta trademark or service mark. And because it suggests nothing about those airlines, palming off cannot be a concern. No one who buys an ABC plane ticket has any reason to think they are actually buying a seat on a United flight or a Delta flight.

And while United or Delta may have developed a "quasi property" interest, id., in various things (like certain ways of doing business) through expenditure of labor or money --- they are not deprived of any of that by an ABC advertisement that, though false, does not actually say anything about United or Delta.

To be sure, ABC's competitors may be frustrated by its less-than-2-hours-to-LA false ad. Consumers may be lured in, and therefore more likely to buy an ABC ticket than one on a competitor airline. This is a painful downstream effect --- and presumably why a competitor might want to sue ABC.

But losing out on possible future business is a long way from being deprived of here-and-now property (or quasi-property).

And the tort of unfair competition, in its palming off guise and also in its misappropriation guise, is zeroed-in on protecting Company-1's property from being taken by Company-2.

\*   \*   \*

Given the above, it is no surprise that courts have routinely held that a false advertising allegation cannot, itself, be the basis for an unfair competition claim.

The key decision in this area is the Sixth Circuit's in American Washboard Co. v. Saginaw Manufacturing Co., 103 F. 281 (6th Cir. 1900).

There, a company designed an aluminum washboard and stamped it with that word --- "aluminum." See id. at 282. A competitor then began selling a zinc washboard, but also put the word "aluminum" on it. See id. at 283.

The first company sued. See id. It pressed an unfair competition claim based on the false advertising --- calling out the second company's pretense that a zinc washboard was made of aluminum. See id.

The Sixth Circuit turned away the claim. See id. at 287.

7

"[T]he private right of action in [unfair competition] cases is not based upon fraud or imposition upon the public, but is maintained solely for the protection of the property rights of a complainant." Id. at 285 (emphasis added).

And on that singular ("solely") property-rights-focused understanding, no unfair competition tort could be made out.

The "property rights" of the "claimant" (the first company) were not implicated by the second company's false advertising. No trademark, for example, was trenched on.

And protecting property rights is the "sole[]," id., focus of the unfair competition tort --- not, say, protecting against the possible loss of future profits that may be a knock-on effect of a competitor's false advertising.

American Washboard has had wide influence,[10] and courts around the country routinely stick to the line it drew, holding that the common-law tort of unfair competition addresses itself to palming off or misappropriation --- but not to stand-alone false advertising. See, e.g., Dayton Sports Ctr., Inc. v. 9-Ball, Inc., 141 Ohio App. 3d 402, 403 (2001); SSCP Mgmt. Inc. v. Sutherland/Palumbo, LLC, 2020 WL 7640150, at *1, *8, *11 (Tex. Ct. App. Dec. 23, 2020); Mod. Tire Rocky Hill, Inc. v. Coccagna-Paparello, 2023 WL 7149473, at *19 (Conn. Super. Ct. Oct. 25, 2023).

As a leading treatise has put it: "[w]here false advertising consisted of the defendant's falsely inflating the virtues of its own products or services, thus potentially lessening the custom or profits of all competitors, the common law refused to provide a remedy." 1 Callmann on Unfair Comp., Tr. & Mono. § 5:9 (4th ed.).[11]

---

[10] Maybe in part because each member of the Sixth Circuit panel would later serve on the Supreme Court.

[11] The common law's lack of a remedy for false advertising does not mean that a remedy is not available. With the Lanham Act of 1946, see Pub. L. No. 79-489, 60 Stat. 427, Congress created by statute a false advertising claim that extends out further than the common law did. See L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649, 651 (3d Cir. 1954) (noting this). And states have passed their own false advertising statutes. See, e.g., Cal. Bus. & Prof. Code § 17200, et seq. (New Jersey repealed its

8

\*   \*   \*

The Court predicts that the New Jersey Supreme Court would hold that there can be no unfair competition claim based only on a false advertising theory.[12]

That is the long-standing consensus view of American courts, as set out above.

And that national consensus provides a solid reason to predict that the New Jersey Supreme Court would follow suit. See, e.g., Howard v. Wells Fargo Bank, N.A., 733 F. Supp. 3d 352, 357 (D.N.J. 2024); Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am., 739 F. Supp. 3d 259, 267 (D.N.J. 2024); Badalamenti v. Resideo Techs., Inc., 755 F. Supp. 3d 534, 541 (D.N.J. 2024).

In addition, decisions of state intermediate appellate courts can be especially useful in predicting how a state supreme court might resolve a given issue. See, e.g., Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000); see also G.E.M.S. Partners LLC v. AmGUARD Insurance Co., 742 F. Supp. 3d 410, 413 (D.N.J. 2024); Navigators, 739 F. Supp. 3d at 266; Tryp Hotels Worldwide, Inc. v. Sebastian Hotel, LLC, 726 F. Supp. 3d 373, 388 (D.N.J. 2024).

Here, there is one relevant New Jersey intermediate appellate court opinion --- and it accords with the general view sketched out above, that false advertising cannot be the only basis for an unfair competition claim.

That case is Tris Pharma, Inc. v. UCB Manufacturing, Inc., 2016 WL 4506129 (N.J. Super. Ct. App. Div. Aug. 29, 2016).

There, the defendant pharmaceutical company sold a cough medicine. See id. at *1. The plaintiff "develop[ed] a generic cough medicine that [was] the bio-equivalent of" the defendant's medicine. See id. But the defendant put out false ads --- that

---

statutory prohibition on false advertising in 1975, see L. 1975, c. 107, § 2 --- which is presumably why the Plaintiff here is seeking to press a false advertising claim via an unfair competition tort, and not based on a statute.)

[12]  See footnote 3 for the meaning of "false advertising," as used in this Opinion and Order.

9

said there was no generic substitute for its product. See id. at *2.

The plaintiff sued, alleging that the defendant's false advertising added up to unfair competition. See id. at *2. But the appellate division turned aside the claim, reasoning that there was "no New Jersey precedent . . . support[ing] [the plaintiff's] assertion that the common law tort of unfair competition encompasses . . . false advertising." Id. at *5.

\*   \*   \*

Federal court understandings of the content of state law can also help predict how a state supreme court will rule. See, e.g., Howard, 733 F. Supp. 3d at 356–57; Tryp Hotels Worldwide, Inc., 726 F. Supp. 3d at 387–88 (D.N.J. 2024); Pinkston v. City of Jersey City, 699 F. Supp. 3d 298, 304 (D.N.J. 2023).

And several federal district courts, relying on Tris Pharma, have held that New Jersey's unfair competition tort does not allow for liability based only on false advertising.

Take two examples.

First: EP Henry Corp. v. Cambridge Pavers, Inc., 2017 WL 4948064 (D.N.J. Oct. 31, 2017).

A company sold flooring, and advertised that it would "always look like new" and the "the color [would] never fade." Id. at *2. A competitor sued, alleging these assertions were false and that the company was liable for unfair competition under New Jersey common law. See id. at *5.

The district court dismissed the claim, and noted the absence of New Jersey precedent supporting the theory that the New Jersey common law tort of unfair competition encompasses false advertising. See id. at *6.

Another example: Smart Vent Prods. v. Crawl Space Door Sys., Inc., 2017 WL 4948063 (D.N.J. Nov. 1, 2017).

A vent manufacturer advertised that its products complied with certain guidelines. See id. at *1. A competitor sued, alleging the ads were false and citing the false advertising as the basis for a New Jersey common law unfair competition claim. See id. at *1, *4.

The claim was dismissed. See id. at *2 n.3.

10

To explain why, the district court invoked Tris Pharma, and the absence of "New Jersey precedent . . . [supporting the view] that the common law tort of unfair competition encompasses . . . false advertising." Id.[13]

\* \* \*

To be sure, some federal district courts come out the other way --- and suggest that false advertising, standing alone, can be the basis for a New Jersey unfair competition claim.

But these do not change the Court's analysis.

Most of these federal district court decisions predate Tris Pharma. See, e.g., Interlink Prods. Int'l, Inc. v. F & W Trading LLC, 2016 WL 1260713, at *5 (D.N.J. Mar. 31, 2016); Zoetis LLC v. Roadrunner Pharmacy, Inc., 2016 WL 755622, at *4 (D.N.J. Feb. 25, 2016); Ferring Pharms. Inc. v. Watson Pharms., Inc., 2013 WL 4081837, at *5 n.5 (D.N.J. Aug. 13, 2013); Harrison Rsch. Lab'ys, Inc. v. Hcramerica, LLC, 2012 WL 12897887, at *11 (D.N.J. Nov. 9, 2012); Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 454 (D.N.J. 2009); Graco, Inc. v. PMC Glob., Inc., 2009 WL 904010, at *27 (D.N.J. Mar. 31, 2009); Castrol, Inc. v. Pennzoil Quaker State Co., 169 F. Supp. 2d 332, 340 (D.N.J. 2001).

Others rely for the key false-advertising proposition on citations to earlier cases, ones that themselves pre-date Tris Pharma. See, e.g., NY Mach. Inc. v. Korean Cleaners Monthly, 2018 WL 2455926, at *4 (D.N.J. May 31, 2018) (citing Bracco Diagnostics, 627 F. Supp. 2d at 454 and Buying for the Home, LLC v. Humble Abode, LLC, 459 F. Supp. 2d 310, 317-18 (D.N.J. 2006)).

And a final set of cases rely mainly on the Third Circuit's pre-Tris Pharma statement that "the federal law of unfair competition under § 43(a) [of the Lanham Act] is not significantly different from the New Jersey [common] law of unfair competition[.]" See, e.g., Telebrands Corp. v. Ragner Tech. Corp., 2019 WL 1468156, at *5 (D.N.J. Apr. 3, 2019)

---

[13] Accord, e.g., In re EpiPen Mktg., Sales Pracs., and Antitrust Litig., 507 F. Supp. 3d 1289, 1382 (D. Kan. 2020) (noting the absence of "New Jersey authority recognizing a common law tort claim based on false advertising" and holding that the claimant's "unfair competition claim [therefore] fails as a matter of law").

11

(quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir. 1994)) (cleaned up); see also, e.g., Congoo, LLC v. Revcontent LLC, 2017 WL 5076397, at *7 (D.N.J. Nov. 3, 2017) (also quoting Am. Tel. & Tel. Co.).

The just-quoted statement from the Third Circuit's 1994 American Telephone and Telegraph Co. decision is broad.

But the Court does not take it as indicating that the existence of a Lanham Act Section 43(a) false advertising claim, see footnote 11, means that there is also a false advertising claim under the New Jersey common law of unfair competition.

First, there are many ways in which Section 43(a) of the Lanham Act "is not significantly different," Am. Tel. & Tel. Co., 42 F.3d at 1433, than the New Jersey tort.  Section 43 forbids palming off, for example.  See 11 U.S.C. § 1125(a); Am. Tel. & Tel. Co., 42 F.3d at 1428 & n.9.  And so does the New Jersey common law of unfair competition.  See, e.g., N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc., 144 N.J. Super. 411, 427-28 (Ch. Div. 1976).

But "not [being] significantly different," Am. Tel. & Tel. Co., 42 F.3d at 1433, in some ways (like palming off) does not mean "not [being] significantly different," id., in all ways (as to, say, false advertising).

Second, American Telephone and Telegraph Co. was not a false advertising case.  See 42 F.3d at 1423 (noting the plaintiff sued because the defendant was "infringing on [its] trademarks and service marks, falsely representing that it was affiliated with [the plaintiff] and passing itself off as [the plaintiff]").

Moreover, the above-quoted statement from American Telephone and Telegraph Co. came in a part of the opinion that discussed whether common-law agency principles, applicable to consideration of the New Jersey unfair competition tort, also had a role in analysis of a Lanham Act Section 43(a) claim.  See id. at 1433.

American Telephone and Telegraph Co. should not be taken as authority for a question that was not before it (about false advertising) and that it was not discussing (it was talking about agency).  See generally Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399 (1821) ("It is a maxim not to be disregarded, that general expressions, in every [judicial] opinion, are to be

12

taken in connection with the case in which those expressions are used.").

And third, a look at the lineage of American Telephone and Telegraph Co. confirms that the quoted statement did not purport to reach and resolve the false advertising question at issue here.

As authority for the quoted statement, American Telephone and Telegraph Co. cited an earlier Third Circuit decision, American Greetings Corp. v. Dan-Dee Imports, Inc., 807 F.2d 1136 (3d Cir. 1986). See Am. Tel. & Tel. Co., 42 F.3d at 1433.

But American Greetings Corp. was an unprivileged imitation case. See 807 F.2d at 1141 (manufacturer of "plush stuffed animals" with "pictorial designs on their white stomachs" sued competitor selling similar products). And an unprivileged imitation claim is close to a palming-off claim (because it involves an allegation that Company-2 is copying Company-1's product, packaging, or advertising), and is far afield from a false advertising claim (which involves, see footnote 3, Company-2 lying about its own product --- but saying nothing about Company-1's).

In turn, for the relevant proposition that it put forward, American Greetings Corp. relied on five earlier Third Circuit cases. See American Greetings Corp., 807 F.2d at 1141. These were: U.S. Golf Ass'n v. St. Andrews Sys., Data-Max, Inc., 749 F.2d 1028 (3d Cir. 1984); Ciba-Geigy Corp. v. Bolar Pharma. Co., Inc., 747 F.2d 844 (3d Cir. 1984); Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148 (3d Cir. 1984); Ideal Toy Corp. v. Plawner Toy Mfg. Corp., 685 F.2d 78 (3d Cir. 1982); and SK & F, Co. v. Premo Pharm. Lab'ys, Inc., 625 F.2d 1055 (3d Cir. 1980).

But none of these five cases were about false advertising. See SK & F, Co., 625 F.2d at 1062 (unprivileged imitation and palming off); U.S. Golf Ass'n, 749 F.2d at 1031 ("false designation of origin" and "misappropriation"); Ciba-Geigy Corp., 747 F.2d at 850 (unprivileged imitation and palming off[14]); Friexnet, S.A., 731 F.2d at 150 (unprivileged imitation); Ideal Toy Corp., 685 F.2d at 80 (palming off).

---

[14] Ciba-Geigy Corp. does not use "palming off," but rather "passing off." These are synonyms. See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 27 n.1 (2003).

13

Bottom line: the quoted statement from <u>American Telephone and Telegraph Co.</u>, though broadly written, does not shed light on the question at issue here --- whether false advertising alone can add up to a New Jersey unfair competition claim.

                                      \*   \*   \*

Where things stand.

In keeping with the underlying property-protection rationale of the common-law unfair competition tort, American law has been consistent: an unfair competition claim can go forward based on a palming off theory or a misappropriation theory --- but <u>not</u> based only on a false advertising theory.

A relatively recent New Jersey intermediate appellate decision, <u>Tris Pharma</u>, confirms that New Jersey unfair competition law is no outlier. It, too, does not allow for a tort claim that rests only on false advertising.

And recent federal court opinions, applying New Jersey law, have landed on that same conclusion.

To be sure, some federal court opinions go the other way, suggesting that false advertising is, under New Jersey's unfair competition law, a viable theory.

But the Court puts those opinions aside. They mainly predate <u>Tris Pharma</u>. Or they base their analysis on a statement from a Third Circuit case that is best taken as not addressing the false advertising question.

                                      \*   \*   \*

Given all this, the Court predicts that the New Jersey Supreme Court would hold that a New Jersey common-law unfair competition claim cannot be sustained when the only basis for the claim is alleged false advertising.

Here, that is the case.

Accordingly, the Plaintiff's unfair competition claim, Count II of the complaint, must be dismissed.[15]

---

[15] A final note. The Third Circuit has indicated that "where two competing yet sensible interpretations of state law exist, we should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of [New Jersey]

14

\* \* \*

It is on this 16th day of October, 2025 **SO ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

decides differently." Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 253 (3d Cir. 2010) (cleaned up). Hewing to this principle, if a new ground for unfair competition liability is to be opened up --- that must be done by the New Jersey Supreme Court, not by a federal district court predicting what the New Jersey Supreme Court might do.